UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DAVID L. COOLEY, JR.,                                                                              PLAINTIFF

V.                                                          CIVIL ACTION NO. 1:21-CV-78-TBM-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                                                  DEFENDANT

## REPORT AND RECOMMENDATIONS

### I.    Introduction

On March 9, 2020, plaintiff David L. Cooley ("Cooley"), proceeding *pro se*, filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Doc. [1].

### II.    Procedural History

On March 18, 2019, Cooley filed for DIB on the basis of multiple medical conditions. Doc. [10], at 163, 175. The Social Security Administration ("Administration") denied his claim initially and upon reconsideration. *Id.*, at 109–21. Thereafter, Cooley participated in a telephonic hearing conducted by an Administrative Law Judge ("ALJ") on September 2, 2020. *Id.*, at 95–108. On September 18, 2020, the ALJ ruled that Cooley was not entitled to DIB. *Id.*, at 23–36. Thereafter, Cooley filed additional records arising from and related to an October 13, 2020 nerve-conduction study. *Id.*, at 8–19. He filed a timely appeal to the Appeals Council ("AC"), which denied his request for review, and the appeal, on January 13, 2021. *Id.*, at 4–8 This action followed. Doc. [1].

### III. Relevant Facts

### A. Relevant Medical Records

Cooley is 55-years-old and has a tenth grade education. Doc. [10], at 30. His work history includes a thirty-year career as a mechanic. *Id.*, at 165–67, 176. On August 29, 2018, Luella Williams APRN ("Williams") diagnosed Cooley with Type 2 diabetes with diabetic polyneuropathy. Doc. [10], at 31, 557, 561. At that time, he reported dizziness and some numbness in his extremities. *Id.*, at 555.[1] Cooley visited Williams for a check-up on April 8, 2019. *Id.*, at 559. During this visit, Cooley reported an unrelated hospitalization and significant weight loss. *Ibid.* While noting that Cooley stopped taking his glucose medications, Williams observed that he controlled his glucose levels through dietary adjustments; she did not renew these prescriptions. *Id.*, at 561, 576. Cooley was otherwise compliant with his medications. *Id.*, at 559–60. Cooley also informed Williams about worsening neuropathic symptoms, including tingling and numbness in his feet, legs, stomach, back, and hands. *Ibid.* To treat Cooley's neurological symptoms, Williams prescribed gabapentin. *Id.*, at 561.[2]

On May 29, 2019, Cooley returned to Williams' office. Doc. [10], at 576. Cooley reported worsening neuropathic symptoms in his back and feet. *Id.*, at 576, 605. Williams doubled Cooley's gabapentin dosage. *Id.*, at 579–80. Returning to Williams again on October 9, 2019, Cooley reported that his neuropathic symptoms continued to worsen, especially in his feet, legs, back, and abdomen. *Id.*, at 610, 612. Williams referred Cooley for a neurological evaluation. *Id.*, at 614, 630.

---

[1] On appeal, Cooley only contests the Commissioner's diabetes-related findings. *See* Doc. [12, 14]. He does not dispute the ALJ's finding about his other claimed conditions were either non-severe or medically indeterminable. Doc. [10], at 28–30.

[2] In connection with diabetes neuropathy, gabapentin is "used to relieve the pain of diabetic neuropathy (numbness or tingling due to nerve damage in people who have diabetes)[.]" (May 15, 2020) *See Gabapentin*, MedlinePlus, https://medlineplus.gov/druginfo/meds/a694007.html.

On June 2, 2020, Abha Mishra, MD ("Dr. Mishra") performed Cooley's neurological examination. Doc. [10], at 630. Cooley informed Dr. Mishra that his neuropathic symptoms continued to worsen and resulted in significant weakness. *Ibid.* In particular, Cooley reported "neuropathic pain, numbness, temperature sensitivity, and tingling" in his "fingers, hands, forearms, upper arms, toes, feet, and legs." *Ibid.* He also reported "gait disturbance, loss of balance, [] muscle cramps," and paresthesias. *Ibid.* After the evaluation, Dr. Mishra scheduled Cooley for a nerve conduction study. *Id.*, at 630, 632. However, Cooley did not pursue the nerve-conduction study at that time because he was unemployed, lacked health insurance, and the study was expensive. *Id.*, at 100–1, 103; [12], at 2. Dr. Mishra continued to prescribe gabapentin. Doc. [10], at 634.

### B. Medical Opinions

#### i. Glenn James, MD

On May 16, 2019, Glenn James, MD ("Dr. James") reviewed the available medical records and formed his own medical opinion. Doc. [10], at 109–14; 20 C.F.R. § 404.1513(a)(2). He determined that Cooley suffered from one medically-determinable, non-severe impairment: diabetes. Doc. [10], at 113. Dr. James opined that Cooley's subjective symptoms of pain were inconsistent with the objective medical evidence. *Ibid.* Ultimately, Dr. James concluded that Cooley had no limitations, was capable of all work and, ultimately, not disabled. *Id.*, at 113–14.

#### ii. Karen Hulett, MD

After Cooley sought reconsideration, Karen Hulett, MD ("Dr. Hulett") reviewed the available medical records and formed her own medical opinion on July 25, 2019. Doc. [10], at 116–21; 20 C.F.R. § 404.1513(a)(2). Dr. Hulett also determined that Cooley suffered from one medically determinable, non-severe impairment: diabetes. Doc. [10], at 119. Cooley's subjective pain

symptoms were inconsistent, she opined, with the objective medical evidence. *Id.*, at 120. Dr. Hulett concluded that Cooley had no limitations, was capable of all work, and, therefore, not disabled. *Ibid.*

### C. Hearing Testimony

At the hearing, the ALJ addressed Cooley's medical records at length. Doc. [10], at 98–101. The ALJ first observed that Cooley's testimony, if any, about his subjective diabetic neuropathy symptoms was insufficient to establish disability absent objective evidence. *Id.*, at 98. Turning to Cooley's then-existing objective medical records, the ALJ observed that Cooley's A1C levels were normal, his glucose levels were under control, and his other physical examination results were largely unremarkable. *Id.*, at 31, 98–99. After noting Dr. Mishra's nerve-conduction study recommendation and Cooley's failure to obtain one,[3] the ALJ strongly recommended that Cooley obtain such a study. *Id.*, at 100, 107.[4]

After the ALJ concluded, Cooley was given an opportunity to testify. Doc. [10], at 101–6. Starting with his upper extremities, Cooley testified that he feels: (i) a "thousand needles . . . sticking him" in his back, left side, and stomach; (ii) "extreme pain" in his shoulder and back; (iii) some pain in his hands; and (iv) pain from the touch of clothing. *Id.*, at 102. Turning to his lower extremities, Cooley testified about pain while wearing shoes, difficulty walking, and discomfort sitting at the hearing. *Id.*, at 102–3. Finally, while conceding that gabapentin takes the "edge off of the pain," he stated that his pain persists on a day-to-day basis. *Id.*, at 102–3.

---

[3] Through counsel, Cooley informed the ALJ that he was a "self-payer" and could not afford a nerve-conduction study. Doc. [10], at 100–1, 103.
[4] In connection with this observation, the ALJ erroneously asserted that the Administration could not pay for a nerve-conduction study in connection with a consultative examination. Doc. [10], at 100–1. Contrary to the ALJ's assertion, nerve-conductions studies are ordered with some frequency as part of a consultative examination. *See*, *e.g.*, *Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 776 (11th Cir. 2018); *Pritchett v. Berryhill*, No. CV 16–413–MU, 2017 WL 4319496, at *8–*9 (S.D. Ala. Sept. 28, 2017); *Robinette v. Colvin*, No. 13–CV–257–FHM, 2014 WL 1303608, at *2 (N.D. Okla. Mar. 28, 2014).

Finally, the ALJ asked the Vocational Expert ("VE") about Cooley's past relevant work. Doc. [10], at 106. The VE testified that Cooley's past relevant work was classified as "automobile body repairer." *Id.*, at 106–7. *See also Dictionary of Occupational Titles* ("DOT") § 807.381–010 (1991), available at www.westlaw.com (database DICOT). Declining to ask any hypotheticals, the ALJ merely asked the VE whether his testimony was consistent with DOT § 807.381–010; the VE answered in the affirmative. Doc. [10], at 106–7. Thereafter, the hearing concluded.

## IV. ALJ's Opinion

In his opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Cooley has not engaged in substantial gainful activity since December 19, 2018. Doc. [10], at 28. The ALJ further found that Cooley suffered from one severe medical impairment: diabetes. *Ibid.* Next, the ALJ concluded that Cooley did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 30. Turning to Cooley's residual functional capacity ("RFC"), the ALJ concluded that Cooley could perform the full range of medium work. *Id.*, at 30–32.[5] At step four, the ALJ concluded that Cooley could return to his past relevant work as an automobile body repairer and, therefore, was not "disabled" under the SSA. *Id.*, at 32–33.

## V. Additional Records

After the hearing, Cooley heeded the ALJ's advice. Doc. [10], at 107. Using money saved from his wife's job, Cooley obtained a lower body nerve conduction study on October 13, 2020. *Id.*, at 8–19; [12], at 2.[6] Finding Cooley's results "abnormal," Dr. Mishra reported that Cooley's

---

[5] In passing, the Court questions whether the ALJ "drastically departed" from the medical opinions of record and, therefore, "played doctor" when formulating his RFC. *See*, *e.g.*, *Cooley v. Comm'r of Soc. Sec.*, No. 2:20–CV–46–RPM, 2021 WL 4221620, at *5 (S.D. Miss. Sept. 15, 2021). While the DDS physicians opined that Cooley was capable of all work, the ALJ concluded that Cooley was only capable of medium work. Doc. [10], at 30–32, 109–21.
[6] Cooley's H-wave latency was not recordable. Doc. [10], at 19, 21.

"peroneal and tibial motors" had "normal latency amplitude" but "delayed conduction velocity." *Id.*, at 21. Furthermore, Cooley's F–wave latencies were prolonged in his peroneal and tibial nerves. *Ibid.* In light of the above, Dr. Mishra concluded that there was "electrodiagnostic evidence of severe sensorimotor polyneuropathy" in Cooley's "bilateral lower extremities in a distal to proximal gradient." *Ibid.* While another gabapentin dosage increase brought relief for Cooley's subjective pain symptoms, he continues to suffer from "intermittent exacerbations of neuropathic pain" and "gait instability and postural instability associated with peripheral neuropathy." Doc. [10], at 3; [12], Ex. 2, at 2, 9; Ex. 3, at 6–7. Indeed, Dr. Mishra also recommended that Cooley take fall-related safety precautions. Doc. [10], at 15.

## VI.     AC Proceedings

After the ALJ issued his decision, Cooley submitted the above-mentioned additional medical records and appealed to the AC. Doc. [10], 8–19, 158. The AC exhibited and reviewed the additional records. *Id.*, at 5. The AC concluded that Cooley's additional medical records "d[id] not affect the decision about whether . . . [Cooley was] disabled beginning or before September 18, 2020" because those records "d[id] not relate to the period at issue." *Ibid.* Ultimately, the AC rejected Cooley's request for review and his appeal. *Id.*, at 4–8.

## VII.     Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, ––– U.S. –––, 139 S.Ct. 1148, 1154, 203 L.Ed.2d

504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance.'" *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

### VIII. Five-Step Process Generally

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). At the fifth step, the burden of proof shifts to the Commissioner to establish the existence of other available substantial gainful employment that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A

finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## IX. Analysis

The AC only considers additional evidence that "is new, material, and related to the period on or before the ALJ's hearing decision." *Martinez v. Astrue*, 252 F. App'x 585, 587 (5th Cir. 2007) (citations omitted). *See also* 20 C.F.R. § 404.970(b).[7] The Fifth Circuit has recognized that "[t]he standards governing consideration of additional evidence by the Appeals Council and district court are similar in requiring that the evidence be both new and material." *Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987)). That is, the Fifth Circuit has applied the same additional evidence test to such evidence rejected at the AC level or only submitted at the district court level. *See*, *e.g.*, *Adams v. Saul*, No. CV 19–12282, 2020 WL 5537102, at *7 (E.D. La. Sept. 1, 2020), *adopted*, No. CV 19–12282, 2020 WL 5535471 (E.D. La. Sept. 15, 2020); *Bond v. Colvin*, No. CIV.A. 4:14–1134, 2015 WL 3658583, at *7 (S.D. Tex. June 12, 2015). As a result, "to justify a remand, the [rejected] evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record . . . ." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Starting with newness, "[e]vidence that was 'not in existence at the time of the administrative . . . proceedings, meets the 'new' requirement for remand to the Secretary.'" *Hunter v. Astrue*, 283 F. App'x 261, 262 (5th Cir. 2008) (quoting *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)). However, "the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not

---

[7] *See*, *e.g.*, *Winston v. Comm'r of Soc. Sec.*, No. CV 20–2823, 2022 WL 775336, at *11 (E.D. La. Feb. 11, 2022), *adopted*, No. CV 20–2823, 2022 WL 742450 (E.D. La. Mar. 11, 2022); *Ayala v. Berryhill*, No. 4:17–CV–00783–O–BP, 2018 WL 1470626 (N.D. Tex. Mar. 8, 2018), *adopted*, No. 4:17–CV–783–O–BP, 2018 WL 1457246 (N.D. Tex. Mar. 23, 2018).

previously disabling." *Garson v. Barnhart*, 162 F. App'x 301, 303–4 (5th Cir. 2006) (quoting *Leggett*, 67 F.3d at 567). Here, the ALJ issued his opinion on September 18, 2020. Doc. [10], at 23–36. However, Cooley's additional records only came into existence after that date. *Id.*, at 8–19. These records address Cooley's already-existing neuropathic symptoms arising from his sole severe impairment, diabetes. *Id.*, at 31, 579, 613, 632. Indeed, the ALJ recommended that Cooley receive a nerve-conduction study to support his claim. *Id.*, at 107. For these reasons, Cooley's additional medical records are "new." *Hunter*, 283 F. App'x at 262.

Next, "[t]o demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." *Dennison v. Astrue*, No. 08–4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citations omitted). "The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987)). Here, Cooley was only scheduled for a nerve-conduction study roughly three months before the ALJ's decision. Doc. [10], at 579, 614, 630, 632. At that time, he was unemployed, lacked health insurance, and the nerve-conduction study costs thousands of dollars. *Id.*, at 100–1, 103; [12], at 2.[8] Notwithstanding these obstacles, Cooley and his wife saved his wife's earnings to pay for a nerve conduction study. Doc. [12], at 2. While he could not obtain a full-body study, Cooley underwent a lower body nerve-conduction study on October 13, 2020–less than one month after the ALJ issued his opinion and the relevant period concluded. Doc. [10], at 9–18; [12], at 2; [14], at 1. For these reasons, Cooley has demonstrated good cause. *Dennison*, 2010 WL 744935, at *6.

Finally, the Court turns to the materiality prong. To determine materiality, the Court asks whether "there is a reasonable possibility that the new evidence would have changed the outcome

---

[8] Cooley admits that fears about contracting COVID-19 at the hospital played a role in his delay. Doc. [12], at 2.

of the Secretary's determination had it been before him." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). *See also Thomas*, 587 F. App'x at 165. "[The] materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied[,]" *Castillo v. Barnhart*, 325 F.3d 550, 551–52 (5th Cir. 2003) (citing *Ripley*, 67 F.3d at 555), and "[does] not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition[,]'" *Johnson*, 767 F.2d at 183 (quoting *Szubak v. Sec 'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

In his RFC, the ALJ concluded that Cooley could undertake the full range of medium work. *See*, *e.g.*, *Harper v. Barnhart*, 106 F. App'x 889, 891 (5th Cir. 2004) (describing the full range of medium work under the regulations).[9] In light of Cooley's RFC, the ALJ concluded that Cooley could return to his past relevant work as an automobile body repairer, DOT § 807.381–010, which is "Medium in exertional demand as classified by the Dictionary of Occupational Title but actually performed at the Heavy exertional demand, specific vocational preparation (SVP) 7." Doc. [10], at 32–33, 106–7. Since the profession has "[p]hysical demand requirements [that] are *in excess of* those for Light Work," an automobile body repairer must be able to undertake a certain amount of medium work. DOT § 807.381–010 (emphasis added).[10] Ultimately, the Court must ask whether there is a reasonable possibility that the additional medical records would have changed the outcome of the Commissioner's determination, *Johnson*, 767 F.2d at 183, that Cooley could return

---

[9] At Step Four, the ALJ needed to assess the physical demands of Cooley's past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Here, the ALJ's Step Four determination rested on a description of Cooley's job "as generally performed in the national economy." *Id.* (citing *Jones v. Bowen*, 829 F.2d 524, 527 n.2 (5th Cir. 1987)).

[10] For example, an automobile repairer must be able to "[e]xert[] 20 to 50 pounds of force occasionally . . . and/or 10 to 25 pounds of force frequently . . . and/or greater than negligible up to 10 pounds of force constantly . . . to move objects." DOT § 807.381–010.

to his past relevant work as an automobile body repairer if those documents were before her, *Chaparro*, 815 F.2d at 1010; *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991).[11]

Here, the ALJ largely discounted Cooley's subjective neuropathy symptoms–including, *inter alia*, significant subjective pain, gait and balancing difficulties, an inability to walk long distances, and touch sensitivity–because Cooley lacked objective medical support. Doc. [10], at 31, 99, 102–3, 105, 559–60, 630–31.[12] However, Cooley's additional records provide objective medical support for his subjective symptoms; after reviewing the nerve conduction study results, Dr. Mishra concluded that Cooley suffers from "severe" neuropathy in his lower extremities. *Id.*, at 21. Notwithstanding his medicine regime reducing nerve pain, Dr. Mishra opined that Cooley continues to suffer from "intermittent exacerbations of neuropathic pain" and "gait instability and postural instability associated with peripheral neuropathy." Doc. [10], at 3; [12], Ex. 2, at 2, 9; Ex. 3, at 6–7. Indeed, Dr. Mishra recommended that Cooley take fall-related safety precautions "at home and outside." Doc. [10], at 15. In light of these records, it is unclear, for example, whether Cooley can *at least* "stand[] or walk[], off and on, for a total of approximately 6 hours of an 8-hour workday"—a requirement of the full range of light work. Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83–10 (S.S.A. 1983). *See also Harper*, 106 F. App'x at 891 (relying on SSR 83–10). Indeed, "being on one's feet for most of the workday is critical" to "most medium work" jobs—including jobs requiring less than a full range of medium work. SSR 83–10 at *6. While not dispositive, Cooley's additional objective medical records coupled with his now-supported subjective symptoms and Dr. Mishra's findings create a reasonable possibility that the Commissioner would have reached a different

---

[11] In passing, the Court questions whether the ALJ's Step Four discussion was sufficient to enable meaningful judicial review. *See*, *e.g.*, *Bean v. Barnhart*, 454 F. Supp. 2d 616, 620–21 (E.D. Tex. 2006).

[12] By extent, his additional records do not merely reflect a subsequent deterioration in his condition. *See*, *e.g.*, Doc. [10], at 102–3, 559–60, 630.

conclusion at Step Four if she had these additional medical records before her. *Johnson*, 767 F.2d at 180.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the case be remanded for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 12th day of July 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE